# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

# COLUMBIA DIVISION

| | |
|---|---|
| WILLIE THOMAS, JR., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3:04-632-MBS-BM |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| THE UNIVERSITY OF SOUTH ) | |
| CAROLINA, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This action was filed by the Plaintiff pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq., alleging employment discrimination. The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on September 30, 2005. After receiving an extension of time to respond, Plaintiff filed a memorandum in opposition to the Defendant's motion on October 25, 2005, following which Defendant filed a reply memorandum on November 4, 2005. Defendant's motion is now before the Court for disposition.[1]

**Background and Evidence**[2]

Plaintiff is an African-American who began working for the Defendant in 1995 as

___

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2] The facts and evidence are considered and discussed hereinabove in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).

1



a Trades Helper in the Energy Services Department. In 1996 Plaintiff was promoted to Trades Worker I, in 1997 he was promoted to Trades Worker III, and in 2002 he was promoted to Trades Worker IV. Plaintiff's Deposition, pp. 8-10; Defendant's Exhibits 4-6. As a Trades Worker IV, Plaintiff was responsible for installing, maintaining, and repairing the steam and chilled water distribution systems on the Defendant's campus. Id.

On or about October 5, 1999, Plaintiff as well as some other maintenance employees of the Defendant filed a joint administrative charge of discrimination with the Equal Employment Opportunity Commission (EEOC). See Plaintiff's Deposition, p. 7; Defendant's Exhibit 2. The EEOC reviewed these complaints, which alleged discrimination between August 19, 1997 and October 1, 1999, for each individual listed on the administrative charge. Id. After Plaintiff's receipt of a right to sue letter on May 21, 2001; see Plaintiff's Deposition, p. 8; this action was filed in the United States District Court asserting claims for disparate treatment race discrimination.[3]

Following numerous discovery problems between the parties, an order was issued on February 15, 2005 which required Plaintiff to identify with specificity his claim against the Defendant. Plaintiff's response was as follows:

> Steam distribution is in the division of energy services. Also in energy services are a group of jobs called "pneumatic control." The positions in pneumatic control pay approximately $2,300.00 more annually than the positions in steam distribution. The positions in pneumatic control are, upon information and belief, comprised of seven white employees and two black employees. In steam distribution, however, there are three black employees and one white employee. This plaintiff believes that white employees are automatically shunted into the pneumatic control jobs on more or less

---

[3]Plaintiff initially filed a joint lawsuit together with the other maintenance employees. That initial action was subsequently withdrawn so that each individual Plaintiff could separately pursue their own individual claims in this Court.

2



routine basis. He believes this shows favoritism. He believes that the work he does is no less difficult or challenging than the work in pneumatic control.

See Plaintiff's Supplemental Answers to Defendant's Interrogatories.

## Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

### I.

### (Compensation and/or Job Assignment Claim)

With respect to Plaintiff's claim regarding the alleged disparity between his pay and the pay received by employees working in pneumatic control jobs, and whether there was any discriminatory animus with respect to this differential and/or these job assignments, this claim as stated could fall within the time period encompassed by Plaintiff's administrative charge. Although this particular claim is not mentioned in the administrative charge or in the general and conclusory allegations of Plaintiff's Complaint, it was referenced by Plaintiff in his supplemental answers to Defendant's interrogatories, as well as in his deposition. See Plaintiff's Deposition, pp. 11-13.

However, even if properly before this Court, Plaintiff has failed to set forth

3



sufficient facts to survive summary judgment on this claim. Since Plaintiff has no direct evidence of discrimination, he must proceed under the structured procedures set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see also Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981).[4] The United States Supreme Court articulated a three-part analysis for reviewing discrimination cases in McDonnell Douglas. First, Plaintiff must establish a prima facie case of discrimination. Once a prima facie case has been established, a rebuttable presumption is created that the employer unlawfully discriminated against the Plaintiff. Second, once this presumption has been established, the burden of production shifts to the employer to show a legitimate, non-discriminatory reason for its actions. Third, if the employer shows a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the employer's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the employer were really based on Plaintiff's race. McDonnell Douglas Corp., 411 U.S. at 802-805; Texas Dep't of Community Affairs, 450 U.S. at 252-256; Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 234-235 (4th Cir. 1991). Despite these shifting burdens of production, however, Plaintiff retains the

---

[4]Pursuant to recent court rulings, consideration of Plaintiff's claim under the so-called "mixed-motive" analysis is also now allowed, even though Plaintiff has presented only circumstantial, or in-direct, evidence of discrimination. Previously, consideration of a claim under the mixed-motive analysis was only proper in direct evidence cases. See Hill v. Lockheed Martin, 354 F.3d 277, 284-285 (4th Cir. 2004); Mereish v. Walker, 359 F.3d 330, 339-340 (4th Cir. 2004); cf. Taylor v. Virginia Union Univ., 193 F.3d 219, 232 (4th Cir. 1999) [en banc] cert. Denied, 528 U.S. 1189 (2000). However, since the Defendant only discusses Plaintiff's claim under the traditional McDonnell Douglas proof scheme, and Plaintiff does not discuss this issue at all, the undersigned has only evaluated Plaintiff's claim using a McDonnell Douglas analysis. Cf. Kess v. Municipal Employees Credit Union of Baltimore, Inc., 319 F.Supp.2d 637, 643 & n. 11 (D.Md. 2004).



ultimate burden of persuasion on the issue of discrimination throughout. Texas Dep't of Community Affairs, 450 U.S. at 252-253; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

In order to establish a prima facie case for race discrimination in compensation under Title VII, Plaintiff must show that (1) he is a member of a protected class; (2) he was paid less than an employee outside the class; and (3) the higher paid employee was performing a substantially similar job. Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 343 (4th Cir. 1994); Kess, 319 F.Supp.2d at 644; Gbenoba v. Montgomery County Dep't of Health & Human Servs., 209 F.Supp.2d 572, 579 (D.Md. 2002). It is undisputed that Plaintiff is a member of a protected class, and the Defendant does not dispute for purposes of summary judgment that he was paid less than some employees outside of his protected class. With respect to the third prong of Plaintiff's prima facie case, however, Defendant argues that Plaintiff has presented no evidence to show that the pneumatic control jobs at issue are substantially similar to Plaintiff's job, and has therefore failed to establish his prima facie case. The undersigned agrees.

Defendant points to the job descriptions for these positions to support this argument. As a Trade Specialist IV, Plaintiff's job purpose is described as follows:

> Under general supervision performs duties of moderate difficulty as a Trade Specialist IV in the operation and maintenance of chilled water and high pressure steam distribution system and other associated equipment of the USC Columbia campus....Operates and maintains auxiliary steam and hot water boilers and associated equipment and controls.

Plaintiff's Deposition, Defendant's Exhibit 6 [Position Description].

Among the essential functions of this job are the following:

> Performs routine installation, maintenance and repair of the chilled water and steam

5



> distribution system including piping, valves, expansion joints, steam traps, steam control stations, condensate receivers and associated pumps....Performs routine inspections of the high pressure steam and chilled water distribution systems....Operate and maintain auxiliary campus boilers; checking to insure that proper operating perimeters are maintained.

Id.

By contrast, the purpose of the pneumatic control position is as follows:

> Responsible for the "efficient operation" and maintenance of the USC campus Central Energy Management System (CEMS) and the Direct Digital Controls (DDC) for Heating, Ventilation and Air Conditioning in major campus facilities. Trains HVAC maintenance personnel in control operation, trouble shooting and maintenance as well as provide support to other campus facilities as required.

Plaintiff's Deposition, Defendant's Exhibit 7.

The essential functions of this position are described as follows:

> Operates and maintains the Campus Central Energy Management System to optimum energy efficiency and reduce cost. Performs system operation, program development and implementation of HVAC control strategies. Maintenance of Primary Building Control Systems and Peripheral Devices including, pneumatic, electric and direct controls for such systems as Central Air Handling Units, Multi-Zone Units, pumping systems and associated EMS hardware….provides input for design plans and specifications to install new controls and HVAC upgrades. Reviews and inspects new control installation projects to ensure compliance with plans and specifications. As necessary, advises, instructs and oversees training for HVAC personnel in the operation and maintenance of HVAC control systems and field devices such as thermostats, pressure and temperature sensors, flow sensors, VAV volume regulators, Air Handling Units…etc.

Id.

While Plaintiff states in his responses to interrogatories that he believes that the work he does is no less difficult or challenging than the work in pneumatic control, he testified at his deposition that, although he works "pretty closely" with the people in the Pneumatic Control Department, his main interaction with them is when they ask for assistance "when the steam side

6



of it [the CEMS] is going through the air handler, a belt or something, and they can't get it, they call me and I will come in." Plaintiff's Deposition, pp. 11-12. This testimony does not establish that Plaintiff's job and the pneumatic control jobs were substantially similar. Plaintiff further argues that the work performed by the two groups was "very closely related", and that the two groups could even have been consolidated. However, this subjective statement also does not establish that these jobs are substantially similar for purposes of a pay discrimination claim, particularly in light of the undisputed job descriptions provided by the Defendant which clearly show that the requirements and functions of these jobs are not the same. Brinkley-Obu, 36 F.3d at 343 [to establish a prima facie case of race discrimination in compensation under Title VII, a plaintiff must prove that the higher paid employee was preforming a substantially similar job]; Gustin v. West Virginia University, 63 Fed.Appx. 695, 698-699 (4th Cir. May 16, 2003) [salary differential justified where position and duties were in fact superior to the Plaintiff's]; Houck v. Virginia Polytechnic Institute and State University, 10 F.3d 204, 206 (4th Cir. 1993) [Plaintiff must show he receives less pay than a co-employee, outside of his protected class, performing work substantially equal in skill, effort, and responsibility under similar working conditions.]; Ogden v. Keystone Residence, 226 F.Supp.2d 588, 602 (M.D.Pa. 2002).

   Further, even if the Court were to consider this evidence sufficient for establishing the third prong of Plaintiff's prima facie case, Plaintiff has failed to present any evidence of pretext with respect to job assignments. Plaintiff himself concedes in his answers to interrogatories that both his department and the Pneumatic Control Department have both white and African-American workers. The undersigned can discern no inference of discrimination under these facts. Cutshall v. Potter, 347 F.Supp.2d 228, 237 (W.D.N.C. 2004) ["[T]he fact that an employer offered a promotion

7



to a member of one race creates a powerful inference that the failure to offer the same promotion to another employee of the same race was not motivated by race discrimination"]. To show pretext in the Defendant's job assignments or salary difference, Plaintiff must present sufficient evidence to create at least a genuine issue of fact that "but for" the Defendant's intent to discriminate against him because of his race, he would have been paid the same as workers in the Pneumatic Control Department or would have received a job assignment in that department. EEOC v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1991); Conkwright v. Westinghouse, 933 F.2d 231, 234 (4th Cir. 1991). "Direct or indirect evidence of discriminatory motive may do, but 'the evidence as a whole . . . must be sufficient for a reasonable factfinder to infer that the employer's decision was motivated by [race animus].'" LeBlanc v. Great American Insurance Co., 6 F.3d 836, 843 (1st Cir. 1993)(quoting Goldman v. First Nat'l Bank, 985 F.2d 1113, 1117 (1st Cir. 1993)(quoting Connell v. Bank of Boston, 924 F.2d 1169, 1172, n. 3 (1st Cir. 1991), cert. denied, 111 S.Ct. 2828 (1991)); see Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141-143 (2000).

Plaintiff has produced no such evidence. Indeed, Plaintiff has presented no evidence to show that he ever even applied for a job in Pneumatic Control, nor has he shown why any salary differential between these two positions is based on race when, presumably, the African-American employees in the pneumatic control jobs make the same higher salaries as do the white employees.[5] Rather, Plaintiff only generally states in his response to Defendant's interrogatories that "positions in Pneumatic Control pay approximately $2,300 more annually than the positions in Steam Distribution." See Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 189

---

[5]The undersigned says "presumably" because Plaintiff has presented no evidence on this issue or to show what the relative salaries are for any of the effected employees.



(4th Cir. 2004) [observing that a Title VII plaintiff alleging failure to promote must demonstrate that he applied for the position in question]; EEOC v. Sears Roebuck & Co., 243 F.3d 846, 851 (4th Cir. 2001) [same].  *Cf.* Crowell v. Taft Broadcasting Co., Nos. 76-0828, 75-1360, 1978 WL 4220 at *13 (N.D.Ala. Apr. 27, 1978) ["[T]he point of focus for the court is whether particular means of compensation in employment are discriminatory, racially discriminatory, and that does not mean necessarily that because a particular black receives less money than a particular white that is in and of itself discriminatory under Title VII, if that is the method by which that difference is applied across the board and uniformly as to both whites and blacks."].

Therefore, as Plaintiff has failed to present sufficient evidence to create a genuine issue of fact as to whether a Title VII compensation violation has occurred, his claim is subject to dismissal.

## II.

### (Other Theories of Recovery)

In his brief opposing summary judgment, Plaintiff also argues that he has asserted a hostile work environment claim, and/or that he is entitled to assert such a claim under the doctrine of equitable estoppel.  For the reasons set forth hereinbelow, the undersigned does not find that either of these arguments has any merit.[6]

---

[6]Plaintiff also refers in his memorandum to claims of other individuals who worked for the Defendant.  However, the previous multi-Plaintiff case was dismissed specifically so that each Plaintiff could pursue their own, *individual*, claim against this Defendant.  Neither this action, or even the prior multi-Plaintiff action, is or ever was a class action.  Honor, 383 F.3d at 190 ["[A]n individual plaintiff in a private, non-class action alleging employment discrimination is not litigating common questions of fact, but the discrete question of whether the employer discriminated against the plaintiff in a specific instance."], (quoting Lowery v. Circuit City Stores, Inc., 158 F.3d 742, 761 (4th Cir. 1998)).

9



With respect to hostile work environment, pursuant to this Court's order of February 15, 2005, Plaintiff was required to specifically identify the claim or claims he was asserting in this lawsuit. In response, Plaintiff identified only the claim relating to the pneumatic control jobs as being the claim he is asserting in this lawsuit. No evidence, exhibits, or other information has been submitted to this Court to show that any hostile work environment claim was being asserted by this Plaintiff. Plaintiff cannot now change his theory of recovery, nor is the Defendant required to defend a claim which essentially becomes a "moving target" depending on the facts and arguments presented.

In any event, even if Plaintiff had asserted a hostile work environment claim in this case, "[i]ncidents outside of the statutory window are [nevertheless] time-barred unless they can be related to a timely incident as a 'series of separate but related acts' amounting to a continuing violation". Beall v. Abbott Laboratories, 130 F.3d 614, 620 (4th Cir. 1997), (citing Jenkins v. Home Ins. Co., 635 F.2d 310, 312 (4th Cir. 1980)); Morgan, 536 U.S. at 105 ["[C]onsideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as any act contributing to that hostile work environment takes place within the statutory time period."]; Huckabay, 142 F.3d at 239. Plaintiff has identified no specific act contributing to any hostile work environment that took place within the statutory time period. Therefore, Plaintiff's hostile work environment argument is without merit.

As for equitable estoppel, Plaintiff states in his brief only that "[f]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel and equitable

10



tolling", citing to Zipes v. Trans World Airlines, Inc., 455 U.S. 385 (1982)]. Plaintiff's Memorandum, pp. 6-7. While setting forth this standard, however, Plaintiff has offered no evidence whatsoever to show why he is entitled to equitable estoppel in this case. Plaintiff's counsel does further state in his brief that the Defendant "let…Plaintiff and other similarly situated go through a seemingly endless labyrinth of complaints with no meaningful response", which Plaintiff argues entitles him to equitable relief. See Plaintiff's Brief, at p. 9. However, Plaintiff has pointed to no exhibits or evidence to support this general and conclusory statement, and the Court cannot allow Plaintiff's Title VII claim to proceed based on such an unsubstantiated argument. See Estrella v. Bryant, 682 F.2d 814, 819 (9th Cir. 1982) [legal memoranda are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment]; Gans v. Gray, 612 F.Supp. 608, 619 (E.D.Pa. 1985) [mere statements made in counsel's briefs are not evidence for the purpose of supporting or opposing a motion for summary judgment]; cf Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1358 (4th Cir. 1995) [counsel's statements are not evidence].

"Equitable relief is reserved for only the most deserving complainants," usually where there exists affirmative misconduct. Polsby v. Chase, 970 F.2d 1360, 1363 (4th Cir. 1992), vacated on other grounds, 113 S.Ct. 1940 (1993)

> Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.

Polsby, 970 F.2d at 1363 (quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)).

11



Here, as noted, Plaintiff has presented no evidence to show that he is entitled to equitable estoppel in this case. Ramirez v. City of San Antonio, 312 F.3d 178, 183 (5th Cir. 2002) ["The party who invokes equitable tolling bears the burden of demonstrating that it applies in his case."]; see also Madison v. St. Joseph Hospital, 949 F.Supp. 953, 960 (D.N.H. 1996).

In reaching the conclusion set forth herein, the undersigned is not signaling a lack of concern over Plaintiff's claim. However, the Fourth Circuit has strictly construed the statutory filing requirements for Title VII cases, holding that "[p]rocedural requirements…for gaining access to the…courts are not to be disregarded by courts out of a vague sympathy for particular litigants." Polsby, 970 F.2d at 1364, vacated on other grounds, 113 S.Ct. 1940 (1993), (quoting Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984)); see Poteat v. Mack Trucks Inc., No. 96-1437, 1997 WL 33117, **4 (4th Cir. January 28, 1997); Chappell v. Emco Machine Works Co., 601 F.2d 1295, 1303 (5th Cir. 1979). Therefore, Plaintiff is not entitled to any equitable relief in this case.

## Conclusion

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted**, and that this case be **dismissed**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

August 2, 2006

